## FITZGERALD MEAT TREE CO. v. NELSON MORRIS & CO.

(Circuit Court, N. D. Illinois, E. D. January 19, 1906.)

No. 27,013.

1. PATENTS—INVENTION—ADAPTING DEVICE TO DIFFERENT USE.

A mere increase in the size, weight, or strength of a device so as to adapt it to an analogous use, although in a different art, is not invention.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 19, 20, 44.]

2. SAME—MEAT TREE.

The Oehmen patent, No. 688,674, for a meat tree is void for lack of patentable invention in view of prior devices used to display goods, practically the same in construction and mode of use.

In Equity. On final hearing.

Offield, Towle & Linthicum, for complainant.
Bond, Adams, Pickard & Jackson, for defendant.

KOHLSAAT, Circuit Judge. This is a final hearing upon a bill to restrain infringement of letters patent No. 688,674, granted to Peter Oehmen, December 10, 1901, for a meat tree. The defenses raised are (1) want of invention; and (2) anticipation. The single claim of the patent is as follows:

"(1) In a meat tree, the combination of a suspendable tree-body or bar, made of uniform size throughout its principal length, and provided at its upper end with means for detachably engaging a support, and a plurality of cross-trees or meat-supports mounted upon said tree-body, each comprising a cross-bar having sliding engagement with the tree-body, and provided at its opposite ends with supporting bars arranged parallel with each other, a row or series of projections upon each supporting bar, and means for securing said cross-trees in adjusted position upon the meat tree-body, substantially as described."

It appears that Oehmen's application for the patent as originally filed contained six claims covering broadly a suspendable meat tree with a plurality of meat-supports, said tree being provided at its upper end with means for engaging a support and an overhead traveling carriage or trolley and supporting rail therefor. The claims were rejected in toto by the primary examiner on the following references;

Patent No. 436,382, to John Schaub, September 16, 1890, for a meat hanger; patent No. 336,123, to John Leggitt, February 16, 1886, for a meat hook; patent No. 629,105, to John J. Fitzgerald, July 18, 1899, for a meat tree; patent No. 303,177, to W. H. Miller, August 5, 1884, for a suspension exhibiting frame. The examiner held that no invention was required to "substitute the hanger of Leggitt for that of Schaub" and to "make the arms of Leggitt's hanger similarly adjustable," such adjustability being shown in the Miller patent. Upon appeal to the board of examiners in chief, this ruling was affirmed. An appeal was then taken to the commissioner of patents, and the assistant commissioner affirmed the decision of the examiners in chief as to claims 1 to 5 inclusive, and reversed it as to claim 6. From the file wrapper in evidence herein, appears the following statement of the assistant commissioner:

"No one of the references shows applicant's device, his organized structure being taken from four different patents in the prior art. Therefore, I am inclined to resolve my doubts as to patentability in his favor. But whatever of patentable novelty there may be is covered by claim 6."

Thereafter Oehmen obtained a rehearing before the commissioner, who after a full hearing, and in the light of the same references, affirmed the decision of the assistant commissioner. The patent then issued with the one claim herein above set out. Thus the claims covering broadly a meat tree with a plurality of arms in combination with a trolley carrier, were rejected by the Patent Office, and the claim as allowed calls for a specific construction embracing a tree-body of uniform size, suspendable, and a plurality of cross-trees each having sliding engagement with the tree-body and having supporting bars arranged parallel with each other. In his specification, however, Oehmen says:

"While I have herein shown a specific form of support mounted upon the tree proper, yet I do not wish to be understood as limiting the invention to this specific construction, since it is obvious that the tree may be provided with suspending devices or meat-supports of different construction from those shown herein without substantially departing from the invention."

Again, in the specification, he refers to the construction shown as being the preferred construction. Defendant insists that as the claim is founded upon a construction which is not of the essence of the invention, the patent is void. There is much force in this suggestion, but it seems unnecessary to discuss this phase of the case apart from the construction of the patent in the light of the art at the time of its issuance. I indicated at the argument a doubt which has not as yet been cleared away, that the claim under consideration disclosed a valid combination. The claim is not for a meat tree. It is for a combination in a meat tree, of a tree-body with a plurality of similar cross-trees, having sliding engagement with the said tree-body. What interrelation or interdependence is there between the various cross-trees, which go to make up this plurality, or in what way do they co-operate to produce a function or result not fully disclosed by any one of such cross-trees? I am impressed by the fact that given the sus-

pendable tree-body and a cross-tree of the claimed construction in sliding engagement therewith, the combination, if it be one, is complete, and the fact that there may be two or a dozen of such cross-trees in nowise adds to or modifies that combination, but goes merely to the question of the capacity of the device. However, assuming, as counsel makes no point thereon, that the claim calls for a valid combination, I cannot escape the conclusion, that the patent fails to disclose invention.

Among the patents cited by the defendant as showing the state of the art, two, not referred to by the Patent Office, are most pertinent. These are letters patent No. 358,475 granted to Joseph R. Palmenberg, March 1, 1887, for a show stand, and patent, No. 554,717 to Thomas F. McGann, February 18, 1896, for a display rack. The Palmenberg patent was for a stand for displaying dry goods. It shows with some slight and unimportant modifications the construction here claimed, except that it was designed to stand upon a base instead of being suspended. As shown in the record, however, the Palmenberg device is suspendable by means equivalent to the eye shown in the preferred construction of the patent in suit. But even were this not so, the change from the base supported device to one suspended, would not rise to the dignity of invention. Such suspended devices were old both in display racks and meat hangers. But complainant insists that the arts are not analogous, and that the Oehmen patent cannot be held to be anticipated by any patent for a display stand. The idea of hanging cuts of meat so as to permit a free circulation of air around each cut during the process of smoking was old. Suspendable meat trees were old. The display rack of the construction shown in this patent was old. A mere increase of the size, weight, or strength of a device so that it can be adapted to analogous use is not invention. A patent for preserving fish in a close chamber by means of a freezing mixture, having no contact with the atmosphere of the preserving chamber, was held invalid as the adaptation of an old process to a new subject; the prior art showing a patent for a similar process in preserving bodies before interment. Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200. Revolving castors being old, the Supreme Court in St. Germain v. Brunswick, 135 U. S. 227, 10 Sup. Ct. 822, 34 L. Ed. 122, held there was no invention in constructing a revolving billiard cue rack. The combination in a savings bank of an inwardly extending tube and a circular row of integral teeth on the inner end of said tube, designed to prevent the withdrawal of paper money from said bank, has just been held by the Circuit Court of Appeals for this circuit in the case of Burns Co. v. Mills et al., 143 Fed. 325, to be the product of mechanical skill, and not invention in view of a similar mechanical form in animal traps. Surely the transformation of the familiar display rack to the meat tree, the adaptability of which to the use of hanging meats ought to suggest itself at once to any one knowing the need of such a meat tree, cannot be said to involve the inventive faculty which is denied to the evolution of the rat trap into a savings bank.

Complainant's further contention is that patentable novelty should

be accorded the device, because it has come into general use and has brought about a greater economy of time and labor. In cases where doubt as to the patentable novelty of a device fairly exists, proof of its favorable reception by the public is often sufficient to resolve the doubt in favor of sustaining the patent. Defendant contends that the record shows that the saving of time and labor comes from the use of the trolley attachment. Be that as it may, utility alone cannot make a device patentable. Nor does it avail to say that this waste of time and labor on the part of the packers continued for years until Oehmen conceived the idea of the meat tree of this construction. It is doubtless true that the vast body of men employed in the various occupations about the smokehouses are not employing even mechanical skill toward the bettering of conditions, and the failure on the part of those in charge of an industry to lay aside worn out devices and employ those ready at hand comes quite as much from inertia as from lack of inventive inspiration.

The bill is dismissed for want of equity.